**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAMAR DOUGLAS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-2905** |
| | : | |
| **WELLPATH HOLDING, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**MURPHY, J.** **NOVEMBER 18, 2026**

*Pro se* Plaintiff Lamar Douglas, who is incarcerated at SCI Phoenix, commenced this civil action by filing a Complaint pursuant to 42 U.S.C. § 1983 against institutional and individual Defendants related to the Pennsylvania Department of Corrections ("DOC") and Wellpath Holdings, Inc., the DOC's medical contractor. After Douglas paid his filing fee in full, the Court directed service of his initial Complaint pursuant to a Memorandum of Understanding between the Court and the DOC. (*See* ECF No. 8.) The Defendants moved to dismiss the initial Complaint, and the Court granted their Motions, providing Douglas with leave to amend. (*See* ECF Nos. 38, 39.) Currently before the Court are Douglas's Amended Complaint, a Motion to Dismiss filed by Defendants Wellpath and Anthony Letizio, and Douglas's response. (*See* ECF Nos. 40, 42, 48.) All Defendants employed by the DOC have filed answers to the Amended Complaint. (*See* ECF Nos. 41, 51.) For the following reasons, the Court will grant the Motion to Dismiss, and this case shall proceed against the answering Defendants.

## I. FACTUAL ALLEGATIONS[1]

Douglas is blind. (Am. Compl. at 1.) At SCI Phoenix, he is classified with a "Z-Code,"

---

[1] The facts set forth in this Memorandum are taken from Douglas's Amended Complaint (ECF

meaning he is housed in a single cell. (*Id.* at 2.) According to Douglas, his Z-Code status "does not permit him to be housed overnight in a prison cell or room with other inmates for any reason." (*Id.* (citing PA DOC Policy 11.2.1, § 5 (concerning Z-coding of inmates)).) Douglas also suffers from a blockage in his urethra that causes him pain when urinating. (*Id.*) He was diagnosed by a urologist at an outside hospital in May 2022, and the urologist "recommended and ordered surgery" to remove the blockage. (*Id.*) He was scheduled to have the procedure in April 2024. (*Id.*)

On April 14, 2024, he "was ordered to go to the SCI Phoenix infirmary in anticipation of going out to a hospital for the long[-]awaited surgery." (*Id.*) When he got to the infirmary, Douglas "was ordered by SCI Phoenix Correctional Officer John Doe #1 to stay in a room overnight with [four] other inmates." (*Id.*) Douglas told C.O. Doe about his Z-code status and stated that it prevented him from being housed with the other inmates overnight because "[b]eing legally blind[, Douglas] is without the ability to protect himself from harm by the other inmates." (*Id.* at 3.) C.O. Doe and Nurse Jane Doe #1 "told[] Douglas that he was going to be housed in a room with four (4) other inmates or else sign a refusal to sleep in a room with four (4) other inmates in the infirmary. [Douglas] is legally blind and could not and did not know what document he was actually signing (*i.e.*, a refusal for medical treatment)." (*Id.*) Douglas asserts that he was denied his urethral surgery because of the "deception" of C.O. Doe and Nurse Doe.[2] (*Id.*) He alleges that he sought to remedy the issue and reschedule his surgery with DOC employees Monique Savage and Britney Huner, to no avail. (*Id.*)

---

No. 40). The Court adopts the pagination assigned to all filings by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.

[2] Nurse Doe has since been identified by Counsel for the DOC as Ms. R. Setzer, R.N. (*See* ECF Nos. 45, 51.)

Douglas asserts that at the time he "was under the care and supervision" of Defendants Wellpath and Letizio, as well as the DOC and SCI Phoenix Superintendent Joseph Terra. (*Id.*) He asserts claims against Wellpath and Letizio that he labels "negligence," but that also include constitutional claims for deliberate indifference to his medical needs, alleging that Wellpath and Letizio failed to properly select, train, and supervise medical staff and failed to properly oversee his treatment. (*Id.* at 4-6.) Douglas also asserts that Wellpath and Letizio violated Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA") by "taking advantage of and discriminating against a legally blind inmate," and in passing asserts that these Defendants violated his "Equal Protection Rights, under a class-of-one theory." (*Id.* at 4, 6.)

## II. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In resolving a Rule 12(b)(6) motion, "a

court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that *pro se* filings are construed liberally).

## III. DISCUSSION

### A. Constitutional Claims

Douglas asserts claims for violations of his constitutional rights based on his medical treatment. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). "Although a court can infer that a defendant

had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga*, 806 F.3d at 227; *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*).

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally

liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted), *cert. denied sub nom. Pennsylvania v. Montanez*, 146 S. Ct. 2731 (U.S. June 15, 2026).

The United States Court of Appeals for the Third Circuit has held that "a private health company providing service to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying the municipal-liability framework of *Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978), to claims against medical contractor)). To hold a private health care company like Wellpath liable for a constitutional violation under § 1983, a plaintiff must allege that the company had "a relevant . . . policy or custom, and that the policy caused the

constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Menkins v. Dep't of Corr.*, No. 24-5258, 2025 WL 2778096, at *4 (E.D. Pa. Sept. 26, 2025) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (quoting *Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017))). A plaintiff asserting such a claim "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (citation omitted).

In dismissing the initial Complaint, the Court concluded that Douglas failed to state a claim against Defendant Letizio because any allegations against Letizio were based solely on his supervisory role; that Douglas failed to state a claim against Wellpath because he had not sufficiently alleged that Wellpath's policies or customs were the cause of his injuries; and that, in any event, all of Douglas's allegations concerned conduct prior to November 11, 2024, for which Wellpath had been discharged in bankruptcy and Letizio released by operation of the confirmed bankruptcy plan. (*See generally* ECF No. 38 at 13-17 (citing, *inter alia*, *In re Wellpath*

*Holdings, Inc.*, No. 24-90533, and *In re Wellpath SF Holdco, LLC*, No. 24-90566 (Bankr. S.D. Tex.)).)

The Amended Complaint does not correct these deficiencies. Douglas pleads that Correctional Officer John Doe #1 and Nurse Setzer were responsible for telling him that he had to sleep overnight in the infirmary with other inmates on April 14, 2024, and ultimately for convincing him to sign the form that led to his purportedly refusing treatment. (Am. Compl. at 2-3.) Douglas further alleges that Monique Savage and Britney Huner continued to deny his requests for treatment after April 14, 2024. (*Id.* at 3.) These individuals are all DOC employees. Rather than plead facts showing that Wellpath's policies or practices led to his injuries, Douglas pleads facts suggesting that DOC employees—possibly acting pursuant to DOC policies—were responsible for the alleged delay or denial of his medical treatment. Accordingly, he has not stated any constitutional claims against Wellpath or Letizio.

**B. ADA and Rehabilitation Act**

Douglas's Amended Complaint mentions the ADA and the Rehabilitation Act only in passing. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("a passing reference to an issue . . . will not suffice to bring that issue before this court.")). Even liberally construed, the Amended Complaint fails to state such claims against these Defendants. Letizio, as an individual, is not liable under those statutes. *See Montanez*, 154 F.4th at 145. While Wellpath cannot be liable under Title II of the ADA because it is not a "public entity," it arguably could be liable under the Rehabilitation Act as an indirect recipient of federal funds. *See id.* at 145-46 (citations omitted).

However, as explained in the Court's Memorandum dismissing Douglas's initial Complaint, Wellpath was discharged in bankruptcy from any liability for any claims arising prior to November 11, 2024. (*See generally* ECF No. 38 at 15-17.) Douglas appears to concede in his Response to the Defendants' Motion to Dismiss that his claims would be affected by the discharge in bankruptcy, but asks that the Court retain Wellpath as a nominal defendant, citing to an order of the United States Bankruptcy Court for the Southern District of Texas. (*See* ECF No. 48 at 15-16 (citing ECF No. 42-3 (reproducing Revised and Amended Clarifying Order, *In re Wellpath SF Holdco, LLC*, No. 24-90566 (Bankr. S.D. Tex. Jan. 26, 2026), Dkt. No. 1279 ("The Clarifying Order"))).) The Clarifying Order allows holders of general unsecured claims to proceed against the Wellpath Liquidating Trust—the entity that has absorbed Wellpath's liability for claims arising prior to November 11, 2024—as a nominal defendant to adjudicate their claims in civil court prior to liquidation. *See* Clarifying Order at 2-4.

As discussed in the Court's prior Memorandum, Douglas has consistently argued "that because the bankruptcy proceedings occurred in Texas, they should have no application to his claims in Pennsylvania; indeed, he has expressly argued that he is 'not a creditor' in the bankruptcy proceedings." (ECF No. 38 at 16 (citing ECF No. 29 at 6-9; No. 32 at 2-3; No. 35 at 1-2; and *In re Wellpath*, Bankr. S.D. Tex. No. 24-90566, at Dkt. No. 1635 (cross-filing ECF No. 35 from this action)).) Douglas has never represented to this Court or to the bankruptcy court that he has filed a proof of claim against Wellpath in the bankruptcy proceedings, or even that he wishes to do so. Therefore, because he does not hold a general unsecured claim, he is not authorized by the Clarifying Order to proceed on any claims arising prior to November 11, 2024, against Wellpath or the Wellpath Liquidating Trust, as nominal defendants or otherwise. And, because the facts in his Amended Complaint do not support any claim that Wellpath violated the

Rehabilitation Act with respect to his treatment at any point after November 11, 2024, he fails to state a claim to relief.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendants Wellpath and Letizio will be granted. The case shall proceed against the remaining answering Defendants.[3] Appropriate orders will be entered separately.

**BY THE COURT:**

**JOHN F. MURPHY, J.**

[3] Douglas filed a series of documents, including a Motion for Default Judgment, that suggest he never received the Answer filed by Defendants Terra and Setzer on October 23, 2026. (*See generally* ECF Nos. 51-57.) The Motion for Default Judgment will be denied, and the Clerk of Court will be directed to send copies of the relevant documents to Douglas. *See* Fed. R. Civ. P. 55(a).